### BAYNARD v. STANDARD KNITTING MILLS CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. SERVANT'S INJURIES — NEGLIGENCE—DEFECTIVE APPLIANCES—EVIDENCE—
SUFFICIENCY.

In an action for a servant's injuries, evidence examined, and *held* insufficient to establish the negligence complained of, which was that a nail binding a treadle and rod together had become dislodged, so that a belt shifter failed to work when the treadle was stepped upon by plaintiff to stop the machinery.

Appeal from Trial Term, Kings County.

Action by Harriet C. Baynard, an infant over the age of 14 years, by Dinah T. Harris, her guardian ad litem, against the Standard Knitting Mills Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Edward P. Mowton (L. Sidney Carrere, on the brief), for appellant.

Henry Escher, Jr. (George F. Elliott, on the brief), for respondent.

HOOKER, J. The hand of the plaintiff, a girl 17 years old at the time of the accident, was caught between two cylindrical rollers of the defendant's steam mangle and injured. The complaint alleges that the defendant negligently failed to provide a suitable screen to cover or protect the rollers, and negligently failed to keep in repair a treadle upon the machine, by means of which the power might be thrown off, and the machine brought to a state of rest. The court submitted the case to the jury upon the latter claim of negligence only, who rendered a verdict for the plaintiff. From the judgment entered thereon, and from the order denying its motion for a new trial, the defendant appeals to this court.

In the pursuit of defendant's business, plaintiff had caused to be run through the mangle a long piece of so-called webbing; and, as the machine was about to complete its work on this piece of goods, plaintiff took up a position at its rear. Adjacent to her foot, as she stood there, was the treadle. It was an elongated piece of metal, with a footplate at either end, and pierced in the center by a round

hole, which served as a collar to fit over the end of a rod, supported under the machine, whose direction was perpendicular to that of the treadle. In its original condition, a screw had been passed through the top of the collar and into the upper side of the end of the rod, by means of which the former was securely attached to the latter, and they acted together, so that force applied to either footplate on the treadle would be imparted to the rod, causing it to commence a rotation in the corresponding direction. The rod was properly connected with the belt shifter upon the mangle. Pressure on one footplate caused the power belt to move onto the rigid belt drum, and the machine to operate; and, conversely, pressure on the other plate threw the belt back to the loose drum, and brought the machinery to a stop. It is evident that adequate connection must be maintained between the treadle and the rod, in order that the mangle might be started or stopped, for the treadle was the only means supplied for that purpose. The screw referred to had accomplished this until about two weeks before the accident, when, because it would not stay in its place, it had been discarded, and a nail had been substituted. The nail was bent over, and it was claimed by the defendant that it was more likely to remain in the place where it was intended to be than the screw, on account of its being bent; but how it was bent, or over or under what, does not appear. In any event, the nail sufficiently answered the purpose for which it was intended for the period of about two weeks. It is plain that, without some such fastening as the screw or nail afforded, the collar and treadle were free to revolve about the end of the rod, with the result that, if one plate was pressed downward with the intent to throw off the power belt and stop the machinery, nothing would be accomplished, save to depress the plate upon which the pressure was applied, and elevate the other, bringing the treadle to a vertical position, or nearly so. As the plaintiff stood in the position described, intending to see that the mangle properly completed pressing the piece of webbing, she discovered that its end had folded over, and was about to pass between the rollers in that condition. To prevent this, she reached over for the purpose of correcting the error, and necessarily put her fingers near the point of contact of the two opposing cylinders or rollers. She was unable to straighten the webbing out, and, finding that her hand was likely to be drawn in between the rollers if they continued to rotate, she says she stepped on the footplate calculated to stop the machinery. The power belt was not thrown off, and she "stamped hard" on the plate again, but her hand was drawn in, and she screamed. Another girl, attracted by the outcry, "jumped" on the plate twice, but that did not relieve the situation; and the belt was thrown off by hand, the rollers released, and the lacerated and burned hand removed.

The plaintiff offered no direct evidence that the nail had fallen out or been removed. The jury were allowed to infer such a condition from the fact that when the treadle was called into use it did not accomplish a shifting of the power belt. The only theory of negligence presented for the jury's consideration, and the only possible one, in the state of the proof, to submit to them, was that the nail

which had been substituted for the screw originally binding the
treadle and rod together had become dislodged; and because there
was, therefore, no connection between them, the belt shifter failed
to work when the treadle was called upon to perform its function.
The defendant offered proof that the nail had not been removed, but
was secure in its place immediately after the accident, and explained
the reason why the belt did not shift by evidence which tended to
show that, when the treadle was first called upon to act, the plaintiff's
hand had been drawn so far between the rollers that they would
separate no farther, and their rotation had ceased, causing the belt
to remain stationary, slipping on the drum attached to the power
shaft near the ceiling. It was explained that this drum was smaller
in diameter than the one upon the mangle, and therefore offered less
resistance, and that a belt not in motion could not be shifted by the
use of the ordinary belt shifter, and that stamping and jumping on
the treadle was of no avail, when directed toward a motionless belt.

It is very clear to us, from the physical condition disclosed by the
evidence, that when plaintiff used the treadle, and when it was jumped
on by the girl who went to her assistance, the nail was in position,
or at least the construction was such that the purpose for which the
nail was used was accomplished; and this irrespective of the defend-
ant's proof that the nail was in its proper place. For, had the nail
fallen out or been removed, the treadle and the footplates were free
to revolve around the end of the rod; that is, the collar in the center
of the treadle, in the absence of the nail, was not held to any partic-
ular position relative to the cylindrical end of the rod, over which it
fitted, and nothing was to hinder its movement around the end of the
rod. The absence of the nail would therefore have been immediately
disclosed when pressure was applied to either end of the treadle, for
its freedom in revolution would have resulted in causing it to be-
come vertical upon the first application. But the collar was not loose,
for the plaintiff pressed twice, and her assistant even jumped upon
the footplate. That the plate was still in a position to be stepped
on a second time seems to be conclusive that the collar was prop-
erly secured to the rod.

Inasmuch as the absence of the nail was the only charge of negli-
gence upon which the case was sent to the jury, and their verdict is
contrary to the facts as they must have existed, the judgment and
order should be reversed, and a new trial granted. All concur;
WOODWARD and HIRSCHBERG, JJ., in result.

HIRSCHBERG, J. I concur in the result. I think it was error
to charge the jury, in substance, that, even if the plaintiff was negli-
gent, she could still recover for that part of her injury which was
caused by the defendant's negligence; the court saying:

"That is, the little pinching she might have got before the treadle was
worked she could not recover for, because she took that chance with her eyes
open; but all she got after that, because the treadle would not work, she
would not be defeated concerning, because she took such chance as she could
see, assuming the treadle was in proper shape."

The law surely allows no such division of the damages.